THE STATE OF OHIO, APPELLEE, v. SIMONES, APPELLANT.

[Cite as State v. Simones (1971), 27 Ohio App. 2d 9.]

(No. 1302—Decided July 21, 1971.)

Mr. *Robert H. Wilson,* for appellant.
Mr. *B. Edward Roberts,* prosecuting attorney, for appellee.

GUERNSEY, J. This is an appeal from a conviction of the defendant of two counts of uttering a forged instrument (R. C. 2913.01).

One instrument is a check drawn on the Richwood Banking Co., Richwood, Ohio, payable to one Leonard Richardson in the amount of $85.00. All blank parts of the check except the signature and the endorsement were completed by typewriter. It is undisputed that the signature of the maker was forged. The check was cashed by a cashier at a party shop who testified that she didn't remember whether the defendant endorsed the check and that the name of Leonard Richardson could have been endorsed on the check before the defendant came into the store. The cashier also made an in court identification claiming it to be based solely on seeing the defendant in

the store on the occasion of the check cashing as well as at other previous times.

The second instrument is a check drawn on The First Citizens National Bank of Upper Sandusky, Ohio, payable to one John Kelly in the amount of $65. All blank parts of the check except the line preceding the printed word "DOLLARS" were completed in handwriting. That line was completed by a check protector which similarly made its impression over the name of the payee. The check was cashed by the proprietor of a bar who testified that he was sure that he didn't see the defendant sign the check and that it was signed when he received it. The proprietor also made an in court identification claiming it to be based solely on seeing the defendant in the bar for some period of time before and after cashing the check, and that he had also picked the defendant's picture from some eight to a dozen pictures presented to him by a police officer. He denied that viewing the defendant by himself at the jail, not in the line up, had anything to do with establishing the identity of the defendant in his mind.

There was testimony that a Leonard Richardson and a John Kelly were known to live or to have lived in the area. Although the checks were dusted for fingerprints none of the fingerprints found were shown to have belonged to the defendant. At one point in the proceedings, when the cashier of the party shop was being queried as to whether the defendant had endorsed the check and whether defendant was the man who presented the check (to which latter question she answered affirmatively), the defendant spontaneously spoke up and asked, "Was the check signed *when I gave it to you?*" (Emphasis added.)

Policeman Maniaci was called as a witness for the defendant and, among other things, testified that when he and the defendant would pass in the halls at the county jail they would converse and the defendant "told me don't worry about the check protector and the typewriter, that they have been destroyed * * *." This testimony was not refuted by the defendant.

From his judgment of conviction and sentence the de-

fendant has appealed assigning error of the trial court (1) in failing to provide the indigent defendant with appointed counsel at the time of arraignment, (2) in the admission of the in court identification of the proprietor of the bar based on a pre-trial confrontation (at the jail) where defendant did not have counsel present, (3) in overruling defendant's motion for a directed verdict made at the close of the State's case and renewed at the close of all the evidence for the reason that the State failed to offer any evidence on an essential element of the crime of "uttering a forged instrument," i.e., knowledge that the instrument was forged, (4) in overruling the motion for new trial, (5) in that the judgment is contrary to law, and (6) in that the judgment is against the manifest weight of the evidence and without sufficiency of evidence beyond a reasonable doubt.

Appellant's first assignment of error reflects the decision of the Supreme Court of the United States in *Coleman* v. *Alabama*, 399 U. S. 1, 26 L. Ed. 2d 287, 90 S. Ct. 1999, decided June 22, 1970, wherein it was determined that an Alabama *preliminary hearing* is a critical stage of the state's criminal process at which accused is entitled to counsel. In his opinion Justice Brennan said:

" * * * Plainly the guiding hand of counsel at the preliminary hearing is essential to protect the indigent accused against an erroneous or improper prosecution. First, the lawyer's skilled examination and cross-examination of witnesses may expose fatal weaknesses in the State's case that may lead the magistrate to refuse to bind the accused over. Second, in any event, the skilled interrogation of witnesses by an experienced lawyer can fashion a vital impeachment tool for use in cross-examination of the State's witness at the trial, or preserve testimony favorable to the accused of a witness who does not appear at the trial. Third, trained counsel can more effectively discover the case the State has against his client and make possible the preparation of a proper defense to meet that case at the trial. Fourth, counsel can also be influential at the preliminary hearing in making effective arguments for

the accused on such matters as the necessity for an early psychiatric examination or bail.''

Notwithstanding its holding regarding this right to counsel for which the petitioners' convictions were thereupon vacated the Supreme Court further held that the cause should be remanded to the Alabama courts for a determination whether the denial of counsel was harmless error as prescribed in *Chapman* v. *California*, 386 U. S. 18, 87 S. Ct. 824, and, pursuant to such determination to either reinstate the convictions or order a new trial. In the *Chapman case,* the Supreme Court held that there may be some constitutional errors in a conviction which, in the setting of a particular case, are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless and which will not require automatic reversal of the conviction, but that before a federal constitutional error can be held harmless the reviewing court must be able to declare a belief that it was harmless beyond a reasonable doubt.

It is apparent from a reading of the *Coleman case* that the preliminary hearing procedure in Ohio is much like that in Alabama and that the preliminary hearing, as such, in Ohio is, therefore, a critical stage of Ohio's criminal process at which the accused is entitled to counsel.

Appellant's claim, however, goes beyond the holdings of the *Coleman case.* The record before us includes a journal entry of the Municipal Court of Marion showing that the defendant was arraigned in open court on two counts of fraud, plead not guilty thereto, waived ''an examination before this court,'' and, the court finding that ''the offense charged has been committed and that there is reasonable and probable cause to believe the accused guilty,'' the appellant was bound over to the Common Pleas Court of Marion County. The entry does not reflect whether appellant had counsel at the time but the State admits in its brief that he did not. Appellant's claim, therefore, is not that he was deprived of counsel at the preliminary hearing but, instead, that he, being indigent, had a right to have counsel appointed to repre-

sent him at the time of the *arraignment* to advise him as to (1) his plea and (2) whether to waive a preliminary hearing.

Nor are we confronted in this case with the situation applying in *Hamilton* v. *Alabama*, 368 U. S. 52, 82 S. Ct. 157, where it was held that arraignment is so critical a stage of Alabama criminal procedure that denial of counsel at arraignment required reversal of conviction, even though no prejudice was shown. The arraignment there was one following indictment by grand jury and involved the loss of opportunity to plead insanity or abatement or to move to quash the indictment on various grounds. Nor are we confronted in this case with the situation applying in *White* v. *Maryland*, 373, U. S. 59, 83 S. Ct. 1050, where it was held that whatever may be the normal function of a preliminary hearing under Maryland law, it is a critical stage of proceeding where lack of counsel for defendant entering a guilty plea which was introduced in evidence against him at the trial requires reversal of his conviction, and the court would not inquire into prejudice against him even though no objection was made to the introduction of such evidence. In the White case the plea was one of guilty. In this case the plea was one of not guilty and confessed nothing and waived nothing which he could assert at trial.

Moreover in Ohio before an accused is arraigned in a magistrates court on a felony charge the court is required to (1) inform the accused of the nature of the charge against him, (2) inform the accused of his right to have counsel and the right to a continuance in the proceedings to secure counsel, (3) inform him of the effect of pleas of guilty, not guilty and no contest, and of his right to trial by jury, and (4) inform him of the nature and extent of possible punishment on conviction and of the right to preliminary hearing. R C. 2937.02. It is only then that he may be arraigned by the reading of the affidavit or complaint, or its substance (R. C. 2937.03), and be required to plead. His plea of not guilty is not a confession of anything but merely permits the magistrate, upon a finding

of probable and reasonable cause to hold the defendant for trial pursuant to indictment by the grand jury, to bind the accused over to common pleas court for consideration and report on the matter by the grand jury. R. C. 2937.09. It is only if the grand jury indicts him (or if the accused waives such indictment) that he comes to trial before the common pleas court and then only after arraignment and plea to the indictment. R. C. 2943.02 *et seq.* Thus a plea of not guilty of a felony before a magistrate loses the accused nothing under Ohio procedure. After his plea the accused is still entitled to a preliminary hearing by the magistrate's taking evidence on the issue of whether the crime alleged has been committed and that there is probable and reasonable cause to hold or recognize defendant to appear before the court of common pleas pursuant to indictment by grand jury, unless the defendant affirmatively waives this right as was done here. R. C. 2937.09, et seq. The appellant does not claim that the municipal court failed to advise him in all respects as required by R. C. 2937.02. It does not appear whether or not the appellant waived counsel, as he had a right to do. Preceding to and in connection with the arraignment the court's advice under the statute supplants the necessity for counsel to do so, and informs the accused of the factors existing upon which the accused may then intelligently determine whether to waive the preliminary hearing after plea of not guilty to a felony charge. If it can be said that an accused may at this stage intelligently waive the right to counsel it is equally valid that he may at this stage intelligently waive the right to a preliminary hearing. If he does not waive the right to same he then is entitled to counsel at such hearing under the law of the *Coleman case.* If he does waive the hearing as here then there is no occasion for counsel under the law of the *Coleman case* and defendant is not deprived of any rights.

Moreover, it appears from the record that the only possible prejudice which might have resulted to defendant from the lack of a preliminary hearing would be a failure to preserve evidence of a fresh recollection by the cashier of the party shop and the proprietor of the bar as to the

defendant's not having endorsed the checks in question in their presence. However, as will be seen from our treatment of the third assignment of error such recollection would have been immaterial to the result.

The second assignment of error deals essentially with the rules of law set forth in the cases of *United States* v. *Wade,* 388 U. S. 218, 87 S. Ct. 1926, *Gilbert* v. *California,* 388 U. S. 263, 87 S. Ct. 1951, and *Stovall* v. *Denno,* 388 U. S. 293, 87 S. Ct. 1967, generally precluding court room identification which is the fruit of a pre-trial line up identification where the defendant has not had counsel. These cases recognize, however, that an in court identification which is based upon observations of a suspect other than from an illegal lineup procedure, or where the introduction of the evidence was harmless error, shall not vitiate a conviction. A reading of the evidence adduced herein discloses that there was sufficient and competent evidence to support the conclusion of the common pleas court that the in court identification here was not tainted by any illegal out of court identification in that it was based on independent observations of the defendant at the time the checks were cashed and a photo identification meeting due process requirements. *State* v. *Jackson,* 26 Ohio St. 2d 74. Moreover, the defendant's uttering the one check may be inferred from his voluntary question to the party shop cashier in open court, "Was the check signed when I gave it to you?"

We find the second assignment of error without merit.

The third assignment of error rests on a claimed failure of the State to prove that the defendant knew that the instruments which he uttered were forged instruments. R. C. 2913.01, defining the crimes herein involved prescribes:

"No person, with intent to defraud, shall * * * or, with like intent, utter or publish as true and genuine such false, altered, forged, counterfeited, falsely printed, or photographed matter, *knowing it to be false,* altered, *forged,* counterfeited, falsely printed, or photographed." (Emphasis added.)

Here, if there was any doubt as to any of the other

aspects of forgery, it was undisputed in evidence that each of the two checks contained forged signatures of the makers.

Knowledge of the false or forged character of the checks was essential to each count on which the defendant was convicted. The defendant claims in argument that there was no proof of lack of knowledge in that each check, even if he was the one who uttered the check, could have been given to him by the endorser after the same was endorsed, and, in such case, that he would have no knowledge that either the maker's or the endorser's signature was a forgery. Defendant's claim gains support from the fact that neither of the persons cashing the checks could testify that the defendant endorsed the checks and, of course, there is nothing in the evidence to show that defendant actually represented to either that he was the person named as payee or who signed as endorser. Again, however, defendant fails in his claims because he talked when he should have remained silent. His own witness, an investigating policeman, testified that defendant "told me don't worry about the check protector and the typewriter, that they have been destroyed * * * ." Defendant adduced no testimony in denial thereof. As a typewriter was used in the preparation of one check and a check protector in the preparation of the other, each check being forged by the maker, this constituted sufficient evidence of probative value to prove defendant's knowledge of the forgery. We find this assignment of error without merit.

The last three assignments of error rest on the same arguments pertaining to the first three and are likewise without merit.

Finding no error prejudicial to the appellant, we conclude that the judgment must be affirmed.

*Judgment affirmed.*

Cole and Cook, JJ., concur.

Cook, J., of the Eleventh Appellate District, sitting by designation in the Third Appellate District.